[S. F. No. 11828. In Bank.—July 16, 1926.]

In the Matter of the Estate of FRIEDRICK ROBERT GUNTHER, Deceased. LELAND GUNTHER HEWITT, a Minor, etc., Appellant, v. CHARLES P. CUTTEN, as Executor, etc., Respondents.

[1] WILLS—CONTEST—UNSOUNDNESS OF MIND—BURDEN OF PROOF—EVIDENCE.—In a will contest on the ground of the unsoundness of mind of the testator, the burden is upon the contestant to show affirmatively that the testator was of unsound mind at the time of the execution of his said will; and in this contest, while it did appear that the testator was old and feeble physically and that he was suffering from many of the infirmities of old age and was approaching the term of his life at the time of the making of his will, the evidence wholly failed to show that with respect to his mental condition before and at the time of and after the date of the execution of said will he was not in a mental condition to fully understand the condition of his properties and the nature and consequences of his act.

[2] ID. — UNNATURAL WILL — INSANE DELUSION — MISTAKEN UNDERSTANDING—EVIDENCE.—In this will contest on the ground of insane delusion of the testator with relation to the contestant as reflected in the terms of his will, conceding that the testator was not altogether justified in the opinion (as expressed in his said

---

1. See 26 Cal. Jur. 756; 28 R. C. L. 398.
2. See 26 Cal. Jur. 688; 28 R. C. L. 90.

will) that the contestant had received and had not made proper use of properties which had theretofore been given him by the testator, it could not be said that his mistaken understanding, if it was such, upon that subject amounted to an insane delusion since it appeared from the evidence that there was some basis of fact underlying the testator's belief upon that subject.

[3] ID.—INSANE DELUSION—BELIEF OR KNOWLEDGE OF TESTATOR.—An insane delusion is not only one which is error but one in favor of the truth of which there is not only no evidence, but regarding which there is the clearest evidence to the contrary. It is a delusion or conception which springs up spontaneously in the mind of a testator and is not the result of his belief or knowledge of any fact which would in reason or in probability furnish evidence in its support.

---

(1) 40 Cyc., p. 1222, n. 19, p. 1332, n. 43.  (2) 40 Cyc., p. 1331, n. 42.  (3) 40 Cyc., p. 1015, n. 75.

APPEAL from a judgment of the Superior Court of Humboldt County refusing to revoke the probate of a will. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fletcher A. Cutler for Appellant.

H. C. Nelson and James W. Henderson for Respondents.

RICHARDS, J.—This appeal is from a judgment of the superior court of the county of Humboldt refusing to revoke the probate of the last will and testament of Friedrick Robert Gunther, entered upon granting the motion for nonsuit upon the hearing of appellant's petition for the revocation of the probate of said will.

Friedrick Robert Gunther, also known as Robert Gunther, died on the nineteenth day of May, 1924, at the city of Eureka, county of Humboldt, of which city he was a resident for many years, and in which county and elsewhere he left property, both real and personal, of considerable value. He left a last will and testament which had been executed by him on August 25, 1923, which was in due course admitted to probate in said court on the nineteenth

---

3. See 26 Cal. Jur. 678; 28 R. C. L. 102.

day of June, 1924. Thereafter and on July 31, 1924, Leland Gunther Hewitt, a minor, then of the age of nineteen years, appearing by his guardian *ad litem,* filed his petition in said court for the revocation of said will, alleging that the decedent was unmarried during his life and at the time of his death left surviving him as his only relative and heir at law the said minor, who was the son of a daughter of a brother of said deceased. Two grounds of contest were urged by said petitioner for the revocation of said will, the first being that said decedent was not at the time of the execution of his said will of sound mind and was not competent to make a will; second, that at the time said decedent executed his said last will and testament he was laboring under a certain insane delusion with respect to said petitioner, and that as a result thereof he had made no provision for said petitioner in said will, but on the contrary had expressly refrained from so doing. The executor of said will, Charles P. Cutten, and two legatees named therein, E. L. French and Mrs. W. H. Mathews, appeared separately, although by the same counsel, and by their respective answers put in issue the averments of said petition with relation to the deceased's unsoundness of mind and of the existence of the alleged insane delusion at the time of the execution of said will. The issues thus presented came on for trial and were heard before said court on the eighth day of June, 1925, the said hearing occupying several days. At the conclusion of the petitioner's case the respondent made a motion for nonsuit upon each of the said grounds of contest, based upon the insufficiency of the proof offered by the petitioner in support thereof. The court granted said motion and thereupon entered its judgment, refusing to revoke the probate of said will. The petitioner moved for a new trial and upon the denial thereof has taken and prosecutes this appeal.

The sole questions presented upon this appeal relate to the sufficiency of the evidence offered on behalf of said petitioner as presenting a sufficient case to go to the jury. Upon the issue of the alleged unsoundness of mind of said decedent, the petitioner presented three witnesses, namely, A. Hanney, Mrs. Edith Rochat, and the petitioner, Leland G. Hewitt. The witness A. Hanney testified that he had known the decedent from the year 1920 up to the time of

his death; that he had seen him nearly every day while he was living in a cabin which he had rented from said decedent, up to July, 1921, when the deceased had gone to San Francisco, where he remained for three or four months, after which he had gone to live with Mr. French in Eureka. The witness saw him there once a month when he went to pay his rent, seeing him about as frequently after the deceased had gone to live at the home of Mrs. Edith Rochat in the summer of 1923. The witness did not see the testator at all during the months of August, September, October or November, 1923, but saw him at intervals after that time when he went to pay his rent to him up to a month before he died. The evidence of this witness shows that the deceased during the time he knew him had gradually become physically weakened with his advancing years and that he had a number of physical ailments which not infrequently accompany old age, and that upon certain specific occasions, of which the witness gave details, he had displayed a certain forgetfulness and lack of memory, but that upon other occasions, both before and after these specific instances, the mind of the decedent had been clear and his memory good, and that the witness in the capacity of the tenant of the deceased had continued to transact business with the latter both before and after the date of the execution of his will and up to within a month of the time of his death. This witness did not see the testator during the period preceding the date of the execution of his will for several weeks and after the execution for more than three months, and his testimony, with the exception of that portion thereof which deals with the physical condition of the decedent and with his occasional lapses of memory, sheds no light whatever upon the capacity of the decedent to make and execute his will on August 25, 1923, or as to his soundness of mind at and for a considerable period before and after said date.

As to the testimony of the contestant, Leland Gunther Hewitt, it may be dismissed as to the first ground of contest with the statement that he had not seen the testator at all since July, 1922, when he paid him a brief visit during which the testator talked rationally to him and readily remembered a former visit which he had paid him during earlier months in the same year. His testimony, therefore, could cast no light upon the capacity of the testator to make or execute his will at the date thereof in August, 1923.

The remaining witness offered by the contestant was Mrs. Edith Rochat, who testified that she had not known the deceased prior to August 3, 1923, when he was brought to her house by Mr. French and when arrangements were consummated by which he made his home with her thereafter up to the time of his death. This witness testified to the weakness and rather distressed physical condition of the deceased when he first came to live with her, and also testified to her treatment of his disorders and to the fact that his physical system responded to her treatment in so far as it was possible, considering his advanced years. This witness gave testimony in considerable detail, both upon direct and cross examination, with relation to the decedent's physical infirmities and also with relation to his mental habitudes; but aside from this she gave no evidence whatever which could be of any possible aid to the contestant in so far as it related to the decedent's mental capacity during the period of his residence with her, and particularly during the period preceding, including and succeeding the time of the making and execution of his said will. On the contrary, this witness, upon her cross-examination, went fully and in detail into the precise circumstances attending the execution of said will and particularly embracing his direction to the attorney who prepared said will with respect to the condition of his properties and with relation to his intended disposition thereof. Upon these subjects this witness offered the most positive evidence as to the soundness of the decedent's mind as to his perfect knowledge of the state of his business affairs and as to his thorough understanding and explicit directions as to the objects of his bounty and contents of his will. The foregoing was the state of the evidence as to his first alleged ground of contest when the contestant closed his case.

As to the second alleged ground of contest, namely, the alleged insane delusion of the testator with relation to the contestant as reflected in the terms of his said will, it appears therefrom that the testator in his said will assigned as his reason for making no provision for the contestant in his said will the following:

"Seventh. My closest relative is Leland Gunther Hewitt, who is a son of Martha Gunther Hewitt. I have purposely made no provision for him in this will for the reason that I have heretofore given property to him of which he has

made bad use. Because of the manner in which he handled this property it is my belief that anything which I might give him by this will would be used unwisely, and it is my desire and intention, so far as I am able to do so, to leave my property to persons who will care for the same and make good use of it. It is for that reason that I have made no provision for Leland Gunther Hewitt by this will." It is asserted by the petitioner as his second ground of contest that the foregoing statements of the testator in his said will were entirely untrue and amounted to an insane delusion on his part with relation to the same and to the contestant. In support of this ground of contest the contestant became his own witness and undertook to testify upon his direct examination that the relation between himself and the testator had been at all times friendly; that the testator had never at any time given him any property other than that of certain occasional presents of money, and that he had never handled any property which he had received from said decedent unwisely. Upon the cross-examination of said contestant the facts were brought out, however, that at one time, when the contestant was quite young, the testator had deeded some property to the father of the contestant in trust for him, and that the taxes on this property had been allowed to go delinquent and that it had been sold for such delinquent taxes, and that later a bank had obtained a judgment against the contestant and his father upon a note signed by both and that the property had been sold upon execution. It is true that the contestant testified that he had never heard of the deed from the decedent to his father in trust for him or of the sale of said property for delinquent taxes or upon such execution. But it nowhere appears from his evidence or from that proffered on his behalf that the foregoing facts had not been brought to the attention of the testator prior to the time when he executed his said will and when he embraced therein his foregoing statement as to his reason for making no provision for the contestant therein.

[1] With respect to the law of the case, it may be said as to the appellant's first ground of contest that the evidence, when viewed in the light of the authorities, must be held entirely insufficient to justify the trial court in sending that branch of the case to the jury. The recent deci-

sions of this court in cases quite similar to the instant case, in so far as they relate to the physical condition and soundness of mind of aged testators, leave no doubt as to the correctness of the ruling of the trial court in granting the motion for nonsuit herein. The requirement, as clearly stated in these decisions, that the presumption that a person is of sound mind and that the burden is always upon the contestant of the will of such person to show affirmatively that the testator was of unsound mind at the time of the execution of his said will, has been wholly unsatisfied by the evidence offered by the contestant in the instant case; for, while it does appear that the testator was old and feeble physically and that he was suffering from many of the infirmities of old age and was approaching the term of his life at the time of the making of his will, the evidence wholly fails to show that with respect to his mental condition before and at the time of and after the date of the execution of said will he was not in a mental condition to fully understand the condition of his properties and the nature and consequences of his act. The cases above referred to are: *Estate of Dole,* 147 Cal. 188 [81 Pac. 534]; *Estate of Dolbeer,* 149 Cal. 227 [9 Ann. Cas. 795, 86 Pac. 695]; *Estate of Purcell,* 164 Cal. 300 [128 Pac. 932]; *Estate of Dow,* 181 Cal. 106 [183 Pac. 794]; *Estate of Casarotti,* 184 Cal. 73 [192 Pac. 1085]; *Estate of Perkins,* 195 Cal. 699 [235 Pac. 45].

[2] With respect to the alleged insane delusion of the testator and of the law applicable thereto, it may be said that while it may be conceded that the testator was not altogether justified in the opinion as expressed in his said will that the contestant had received and had not made proper use of properties which had theretofore been given him by the testator, it cannot be said that his mistaken understanding, if it be such, upon that subject amounted to an insane delusion since it appears from the evidence that there was some basis of fact underlying the testator's belief upon that subject. [3] An insane delusion is not only one which is error but one in favor of the truth of which there is not only no evidence, but regarding which there is the clearest evidence to the contrary. It is a delusion or conception which springs up spontaneously in the mind of a testator and is not the result of his belief or knowledge of any fact which would in reason or in probability furnish

evidence in its support. The law upon this subject has been very fully and ably set forth in *Estate of Scott*, 128 Cal. 57 [60 Pac. 527] ; *Estate of Allen*, 177 Cal. 668 [171 Pac. 686] ; *Estate of Russell*, 189 Cal. 759 [210 Pac. 249] ; *Estate of Perkins*, 195 Cal. 699 [235 Pac. 45] ; *Estate of Shay*, 196 Cal. 355 [237 Pac. 1079] ; and cases cited: It follows from these authorities as applied to the facts of this case that the contestant herein furnished no sufficient evidence of an insane delusion on the part of said testator as would have served to justify the trial court in denying the respondent's motion for a nonsuit upon that ground also.

It follows that the judgment herein must be and the same is hereby affirmed.

Seawell, J., Curtis, J., Shenk, J., and Waste, C. J., concurred.