[No. 6,374.—In Bank.]

# IN THE MATTER OF THE ESTATE OF DAVID GHARKY, Deceased.

Estates of Deceased Persons—Contest of Will—Issues for Jury—Un-soundness of Mind—Drunkenness.—Where unsoundness of mind is relied on to defeat a will, the question of drunkenness, being mere evidence, should not be submitted as a special issue to the jury.

Id.—Id.—Unsoundness of Mind—Pleading.—It is sufficient to state, as ground for contest of will, that the deceased, at the time of making it, was not of sound and disposing mind; but when the grounds embrace conclusions of law, as menace, duress, or the like, the facts relied upon to show such conclusions must be pleaded.

Signature—Evidence.—A subscribing witness who has no recollection of the execution of an instrument, but who recognizes the signatures, may be asked whether, taking into consideration his recognition of the signatures, it was his belief that the paper was executed as therein stated.

Appeal from an order admitting a will to probate, and an order denying a new trial, in the Probate Court of the County of Santa Cruz. Craig, J.

*F. Adams*, and *C. B. Younger*, for Appellant.

The Court erred in not submitting to the jury, whether the deceased, at the time of the execution of the said several instruments alleged to be his will, was laboring under habitual intox-

ication to such an extent as to totally impair his memory, or the other issues requested by the plaintiff in relation to the same matter.

One of the issues raised between the plaintiff and defendant was in relation to the matter embraced in said requested issues, and the special issues submitted to the jury should have included every question of fact raised by the pleadings, and should have been separately and distinctly stated, so that each question should relate to only one fact. (*Phœnix Water Co.* v. *Fletcher*, 23 Cal. 482.)

The belief of the witness was not evidence upon the question of execution. (*Brown* v. *Cady*, 19 Wend. 476; *Cutter* v. *Carpenter*, 1 Cowen, 81.)

*John C. Hall*, and *W. D. Story*, for Respondent.

The issues proposed by contestant were mere evidence, and the effect of such evidence was embodied in the issues submitted.

The right of the proponent of a will to ask an attesting witness who recognizes his signature to the attestation clause, but has no independent recollection of the circumstance of the execution of the will, whether, recognizing his signature, he is satisfied that the will was executed with the formalities enumerated in the attestation clause, is well established.

The rule seems to be founded upon the difficulty, and often impossibility, of a witness remembering matters which occurred years before; also upon the doctrine that the witness to a will is in duty bound to guard the testator against imposition, by taking care that all the formalities required by law have been observed, and the presumption is, that he has performed his duty.

See 1 Redfield on Wills, 4th ed. p. 228; 3 id. 3rd ed. p. 43; 3 id. p. 345, note 14, ed. 1866; Redfield's Am. Cases on Law of Wills, p. 634; Read's Modern Probate of Wills, p. 459; *Lawrence* v. *Marston et al.*, 45 Barb. 448; *Nelson* v. *McGriffest*, 3 Barb. Ch. 158; *Jannay* v. *Thome*, 2 id. 40; *Trustees etc.* v. *Calhoun*, 25 N. Y. 422; *Peck* v. *Cary*, 27 id. 9; *Young* v. *Burner*, 27 Gratt. 96; Jameson on Wills, p. 266; and especially *Lawyer* v. *Smith*, 8 Mich. 411, where the questions propounded to the witness were identical with those in this case.

Myrick, J.:

The deceased died August 16th, 1877, aged about seventy years. The proponent Werner offered for probate, as the last will and testament of deceased, three documents, one styled a will, dated July 30th, 1869, and two codicils, dated respectively May 19th, 1873, and August 15th, 1877. The codicils referred to confirmed and ratified the will, except as to changes made therein. The will named the proponent Werner as executor, and devised and bequeathed all of the property of the deceased to five persons named therein, and their successors, in trust, to manage the same, and out of the annual income to pay one-half thereof to his son David Gharky, during his natural life; after the death of the son, to the son's wife during her life, and after her death, to the child or children of said son until they attain their majority; the other half to maintain such poor people of Santa Cruz County as may be chosen by the trustees; and after the death of the son and wife and the majority of his children, the whole to go for the benefit of said poor. The first codicil named another person to be trustee in place of one who had died; revoked every provision of the will in favor of the son, bequeathed to him ten dollars, and directed that one-half of the income be paid to the son's wife during her life, then to the children of the two during minority, remainder as specified in the will. The second codicil revoked the appointment of one of the persons as trustee, and named another in his stead; and, reciting that the wife of the son had died since the making of the former codicil, leaving a son and daughter, directed that one-half of the income be paid to said two children during minority, and upon attaining majority, one-half of the estate to go to them and the survivor of them, or if both die during minority, the whole to remain in trust as before specified, said son, David Gharky, to be paid twenty dollars per month during his life, and neither he nor any child of his other than the two named to have any further share in the estate.

The estate of the deceased was of the value of about $30,000, as stated in the petition. Testator's wife had died in 1868, before the making of the alleged will of July 13th, 1869.

The son, David Gharky, filed an opposition to the probate of

the papers as the will of deceased, stating his grounds of contest as follows:

"1. That the deceased, at the date of making of said pretended will, and at the dates of the making of the alleged codicils thereto, was incompetent to make said or any will, or to make either or any of the alleged codicils thereto.

"2. That said pretended will is not the will of said deceased.

"3. That at the time of the alleged signing of said pretended will, and of the said several alleged codicils thereto, said deceased was laboring under and had an insane delusion as to said contestant.

"4. That at the time of the alleged signing of said pretended will, and of said several alleged codicils thereto, said deceased, David Gharky, was not of sound and disposing mind.

"5. That at the time of the alleged signing of said pretended will, and of the said several alleged and pretended codicils thereto, said deceased was and had been habitually intemperate from the excessive use of intoxicating liquors, and was thereby, and by reason thereof, incapacitated from executing said pretended will, or either or any of the said alleged codicils thereto.

"6. That said deceased, at the time of the signing of the alleged and pretended will, and of the said several alleged codicils thereto, was laboring under insane delusions, by reason of habitual intoxication, produced by the excessive use of intoxicating liquors and wines.

"7. That said pretended will, and said several alleged codicils thereto, are, and each of them is, void.

"8. That said pretended will, and the said several alleged codicils thereto, were not, nor has any or either of them been, signed by said deceased at a time when he was of sound and disposing mind.

"9. That at the time of the alleged signing of said pretended will, and of the said several codicils thereto, by said deceased, he was under undue influence, passions, and prejudices against said contestant.

"10. That said pretended will, and the said several pretended and alleged codicils thereto, are, and each of them is, void, because the pretended bequests therein mentioned are not certain, either as to the objects or definite as to amount, but are discretionary and not susceptible of enforcement.

"11. That the said pretended will, and the said several alleged codicils thereto, are, and each of them is, uncertain and indefinite as to the powers and duties of the several trustees therein named.

"12. That the duties and powers of the persons named in said pretended will, and of the said several alleged codicils thereto, are too indefinite and uncertain to authorize their enforcement by any court."

Answers were filed by the proponent and trustees, and the contest was tried by jury; the Court framed and submitted to the jury thirteen issues, viz.: three as to whether the deceased was of sound and disposing mind at the dates of the respective papers, three as to the signature to said papers, three as to the signing and attesting of said papers, three as to whether said papers respectively were signed and declared by deceased freely, without duress, menace, undue influence, or fraud; and the last issue as to whether he was at said times laboring under any insane delusion. The jury were instructed to find upon all these issues, which they did, sustaining the will and codicils. The contestant moved the Court to frame and submit to the jury thirteen questions as issues, which are contained in the transcript. The Court denied the motion, and the contestant excepted. It is sufficient to say, that such of said questions as were proper to be submitted as issues were embraced within those submitted; the others were questions as to evidence, and not as to conclusions to be drawn from evidence. For instance: "2. Whether the deceased, David Gharky, was habitually intoxicated from the 1st day of February, 1869, down to the time of his death?" First, seventh, and eleventh, as to lewd conduct on his part. "9. Whether the deceased was ever sober at any time in his life?" And twelfth and thirteenth, whether the deceased executed a will dated November 3rd, 1853, a codicil dated June 12th, 1863, filed herein August 20th, 1878?

None of these questions were proper questions to be submitted to the jury as issues. Evidence of intemperate habits on the part of deceased was competent, from which the jury might determine as to soundness or unsoundness of mind; drunkenness was not the ultimate fact to be found; the ultimate fact was, had drunkenness or anything else produced a given result; viz.,

unsoundness of mind?   That issue was submitted to the jury in the first three issues; and those issues were the only proper ones to be submitted under the contest as presented.   The only legal issue presented by the contestant was as to the soundness or unsoundness of mind of the deceased at the time of executing the respective papers offered for probate.   No issue was presented in the written opposition as to the signing or witnessing of either of the papers; therefore, no evidence was to go to the jury upon those matters, nor any issue relating thereto submitted.   In *Estate of Cartery*, 56 Cal. 470, this Court had occasion to indicate the proper course to be pursued in proposing grounds of contest and in trying the issues raised thereby.   Although in this case, the Court below went beyond the course there indicated as proper to be pursued, and permitted evidence to go to the jury, and submitted issues, not relating to unsoundness of mind; yet as it is not apparent that the contestant was injured, we should not therefore set aside the verdict and reverse the judgment.

In stating the grounds of contest, if unsoundness of mind is relied on, it is sufficient to state that the deceased, at the time of the alleged execution of the proposed paper, was not of sound and disposing mind ; unsoundness is the ultimate fact to be found, and acts of inebriety or other causes are to go to the jury, from which they are to find ; and the issue upon that subject is to be of the ultimate fact only ; but when the grounds of contest embrace duress, menace, fraud, undue influence, due execution and attestation, subsequent will or the like, such matters, not being ultimate facts, but conclusions of law to be drawn from facts, must be pleaded, not in the language of the statute, but the facts (not evidence of the facts) relied on must be stated, and issues relating thereto submitted to the jury, to the end that the Court, either upon demurrer to the statement of the grounds of contest, or upon the verdict, may determine whether, as matter of law, such facts so pleaded or found constitute a valid reason why the proposed paper should not be admitted to probate.   This course is plain, logical, direct, and is a certain guide to the Court, to counsel, and to the jury ; the other course leads to uncertainty as to what is relied upon, and to doubt as to what may be the basis of the verdict.

The instructions to the jury, in which a conflict is alleged, relate to matters not properly before the jury; it is manifest that the appellant was not injured thereby, and the alleged error is no ground for reversal.

There was no error in the refusal of the Court to grant a continuance.

The questions propounded to the witness Chace were not proper cross-examination, and the Court was justified in sustaining the objections to them.

One of the witnesses to the will of July 30th, 1869, being examined, had no recollection of the circumstances attending the execution of the paper, but recognized the signatures, and was asked if, taking into consideration his recognition of the signatures, it was his belief that the paper was signed and executed as stated therein. The Court admitted the testimony of the witness. The authorities and the reasons for sustaining this ruling are ample.

One Wanzer was sworn as a witness on the part of contestant, and being shown papers purporting to be a will and codicil of deceased, dated November 3rd, 1853, was interrogated as to their execution. The Court sustained objections to the evidence. There was no error in the ruling. Under what theory, under the issues in this case, the evidence was offered, we do not perceive. The will of July 13th, 1869, and codicils assumed to dispose of the entire estate, and the validity thereof would not be affected by any prior will. If the deceased was of sound and disposing mind at the time of executing the papers in question, the execution of prior wills was of no consequence.

No error appears in the record; therefore, the judgment and order are affirmed.

MORRISON, C. J., SHARPSTEIN, J., McKINSTRY, J., THORNTON, J., ROSS, J., and McKEE, J., concurred.